RECEIVED 5pm

2008R00300/HB

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

OCT 21 2010

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES OF AMERICA          :    Crim. No.
                                  :
         v.                       :    10-714 (JAP)
                                  :
MARK HOLZWANGER,                  :    18 U.S.C. §§ 1343 and 2
ANDREW MUHLSTOCK,                 :
STEPHEN GUTHARTZ, and             :
RUSSELL SPERANZA                  :

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting in Trenton, charges:

1.    At all times relevant to this Indictment:

a.    Total Time Solutions, LLC, also known as "TTS," also known as "TTS Payrolls" (hereinafter "TTS"), was a company that purported to provide payroll services to businesses located in New Jersey and elsewhere.  The payroll services offered by TTS included processing clients' payroll each payroll period, preparing, signing, and filing all federal, state, and local tax deposits and tax returns, and the payment of federal and state taxes.  TTS maintained an office within the office space of the accounting firm of Muhlstock Holzwanger in New York, New York.

b.    The accounting firm of Muhlstock Holzwanger was a partner and member of TTS for the year 2002.

c.    Defendant MARK HOLZWANGER was a certified public accountant, and a partner and member in both TTS and Muhlstock Holzwanger.

d.    Defendant ANDREW MUHLSTOCK was a certified public accountant, and a partner and member in both TTS and Muhlstock

Holzwanger.

      e.  Defendant STEPHEN GUTHARTZ was an employee and a partner and member in TTS from 2003 to 2005.

      f.  Defendant RUSSELL SPERANZA was an employee of Muhlstock Holzwanger who was involved in the operation of TTS.

    2.  The Internal Revenue Service ("IRS") is an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States, and collecting the taxes that are due and owing to the Treasury of the United States by its citizens and businesses.

    3.  Federal income tax withholding ("Withholding Taxes") and Federal Insurance Contribution taxes ("FICA Taxes"), as more particularly described below, constitute "Payroll Taxes."

      a.  <u>Withholding Taxes</u>:  Generally, employers must deduct and withhold income tax on the amount of wages that actually or constructively are paid to their employees and pay those withholding taxes to the IRS.

      b.  <u>FICA Taxes</u>:  The Federal Insurance Contributions Act ("FICA") is a United States Employment tax imposed in an equal amount on both employers and employees to fund certain federal programs.  FICA mandates that an employer withhold a percentage of an employee's salary each pay period to pay the taxes.  An employer must deduct the employee's share of the taxes from wages paid to the employee and also must pay the employer's share of the taxes.

      c.  Employers are required to collect, truthfully account for, and pay to the IRS Payroll Taxes.  These taxes are

reported on the "Employer's Quarterly Federal Tax Return," IRS Form 941.

      d.   IRS regulations govern the date subsequent to a payroll period by which an employer must pay its Payroll Taxes to the IRS.   The date by which an employer must pay its Payroll Taxes to the IRS is generally determined by the size of an employer's payroll and the date on which an employer pays its employees.

    4.   In relation to the issuance of paychecks to employees, many employers contract with payroll services companies, like TTS, to handle the necessary operations related to the calculation, withholding and paying of Payroll Taxes to the IRS.

**THE SCHEME TO DEFRAUD**

    5.   From in or about January 2002 through in or about November 2005, in the District of New Jersey, and elsewhere, defendants

MARK HOLZWANGER,
ANDREW MUHLSTOCK,
STEPHEN GUTHARTZ, and
RUSSELL SPERANZA

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud clients of TTS of money and property by means of materially false and fraudulent pretenses, representations and promises, as set forth below.

## THE OBJECT OF THE SCHEME

6. The primary object of the scheme and artifice was to fraudulently induce and cause clients of TTS to allow money to be withdrawn from their bank accounts purportedly to be paid over to the IRS for the clients' Payroll Taxes, but instead that money was used to pay the operating expenses of TTS. As a result of defendants' fraudulent conduct, the defendants profited or intended to profit by, among other things, fraudulently increasing the value of TTS and by using TTS transactions to support claims on their personal tax returns.

## THE MEANS AND METHODS OF THE SCHEME TO DEFRAUD

7. Among the means and methods used by defendants HOLZWANGER, MUHLSTOCK, GUTHARTZ, and SPERANZA to carry out the scheme to defraud include the following:

a. As part of the scheme to defraud, defendants fraudulently induced TTS clients to give TTS permission to withdraw money from clients' bank accounts.

b. It was further part of the scheme that the defendants fraudulently represented that money withdrawn by TTS from their clients' bank accounts would be used by TTS to process the clients' payroll, and to pay to the IRS the clients' Payroll Taxes.

c. It was further part of the scheme that money withdrawn from clients' bank accounts for the payment of Payroll Taxes was either not paid to the IRS when due or not paid at all, but used to pay the operating expenses of TTS.

d. It was further part of the scheme that TTS clients

4

were falsely informed that money withdrawn from their bank accounts for the purpose of paying Payroll Taxes would be paid over to the IRS when due.

      e.   It was further part of the scheme that money withdrawn from one TTS client's bank account for the payment of that client's Payroll Taxes was used to pay the Payroll Taxes of other TTS clients.

      f.   It was further part of the scheme that the defendants caused false and fraudulent reports to be submitted to TTS clients regarding payroll services rendered by TTS.

      g.   It was further part of the scheme that to conceal from TTS clients that their Payroll Taxes had not been timely paid to the IRS, defendant SPERANZA directed TTS employees to prepare and submit to the IRS Forms 941 on behalf of TTS clients that falsely stated that the Payroll Taxes for a particular quarter had been paid to the IRS.  The Forms 941 also misrepresented the dates upon which a client's payroll was paid to its employees and, thus, the date by which a client's Payroll Taxes were required to be paid to the IRS.

      h.   It was further part of the scheme that to conceal from TTS clients that their Payroll Taxes had not been timely paid to the IRS, defendant SPERANZA directed TTS employees to prepare and deliver to TTS clients Forms 941 that falsely stated that Payroll Taxes for a particular quarter had been paid to the IRS.  Unlike the Forms 941 sent to the IRS, the Forms 941 sent to TTS clients correctly represented the dates upon which a client's payroll was paid to its employees and, thus, the date by which a

client's Payroll Taxes were required to be paid to the IRS.
Clients were not informed that a different Form 941 was sent to
the IRS.

     i.  It was further part of the scheme that when a
client received a notice from the IRS regarding the late payment
or non-payment of Payroll Taxes, and that client contacted an
employee of TTS regarding that notice, that client was not
informed that the money withdrawn from its bank account for the
payment of Payroll Taxes had not been paid over to the IRS.
Rather, the client was informed that TTS employees would conduct
an investigation into the notice.

     j.  It was further part of the scheme that on or about
October 10, 2003, defendant HOLZWANGER prepared, and defendant
SPERANZA signed, an IRS Form 1065, "U.S. Return of Partnership
Income" on behalf of the partners of TTS for the year 2002.  That
return stated that for the year 2002 TTS earned total income of
$38,037 in gross receipts and had $671,259 in deductions,
including salaries and wages for TTS employees, travel expenses,
and software fees, resulting in an ordinary income for that year
of a loss of $633,222.

     k.  It was further part of the scheme that on or about
October 14, 2004, defendant HOLZWANGER prepared, and defendant
GUTHARTZ signed, an IRS Form 1065, "U.S. Return of Partnership
Income" on behalf of the partners of TTS for the year 2003.  That
return stated that for the year 2003 TTS earned $365,068 in gross
receipts and had $1,110,762 in deductions, including salaries and
wages for TTS employees, travel expenses, and software fees,

6

resulting in ordinary income for that year of a loss of $745,694.

l.   It was further part of the scheme that defendant HOLZWANGER claimed a loss of $248,540 from the operation of TTS on his 2003 individual federal income tax return.

m.   It was further part of the scheme that defendant HOLZWANGER, in fact, had no actual loss that resulted from the operation of TTS, because client Payroll Tax funds were used to cover the losses incurred by TTS.

n.   It was further part of the scheme that defendant MUHLSTOCK claimed a loss of $248,614 from the operation of TTS on his 2003 individual federal income tax return.

o.   It was further part of the scheme that defendant MUHLSTOCK, in fact, had no actual loss that resulted from the operation of TTS, because client Payroll Tax funds were used to cover the losses incurred by TTS.

p.   It was further part of the scheme that on or about October 13, 2005, defendant GUTHARTZ signed an IRS Form 1065, "U.S. Return of Partnership Income" on behalf of the partners of TTS for the year 2004.  That return stated that for the year 2004 TTS earned $841,043 in gross receipts and had $2,162,025 in deductions, including salaries and wages for TTS employees, travel expenses, and software fees, resulting in ordinary income for that year of a loss of $1,320,982.

q.   It was further part of the scheme that in or about September 2005, defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ entered into an agreement to sell TTS (the "Agreement"). Defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ signed the

Agreement as the "Sellers" of TTS.  Attached to the Agreement were financial statements of TTS, including a balance sheet for TTS as of September 30, 2005.  Defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ represented that those financial statements "fairly and accurately present, in all material respects, the financial position of [TTS] as of such dates."  The balance sheet for TTS as of September 30, 2005 stated that TTS had cash on hand of approximately $1.6 million in its bank accounts and a liability of over $5 million in unpaid client taxes.

      r.  It was further part of the scheme that in or about October 2005, defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ, and the purchaser of TTS, executed an amendment to the Agreement (the "Amendment").  Defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ signed the Amendment as the "Sellers" of TTS.  The Amendment listed the "Closing Date" of the sale of TTS as November 1, 2005.

      s.  It was further part of the scheme that defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ in the Amendment sought to conceal the true amount of client Payroll Taxes that TTS had withdrawn from client bank accounts and failed to pay over to the IRS as of the Closing Date.  In that Amendment, defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ represented that "[e]xcept as set forth in Schedule 4.11 listing all known notices from taxing authorities, [TTS] within the normal course of business as a payroll service company has on behalf of its customers (i) Timely paid or caused to be paid any and all payroll related taxes, including any interest and penalties assessed thereon ("Taxes") required to be paid through the Closing Date."  Schedule 4.11 was

attached to the Amendment and listed approximately $127,000 in unpaid client taxes that TTS failed to pay prior to the Closing Date.

t. It was further part of the scheme that in fact over $3 million in Payroll Taxes had not been paid over to the IRS prior to the Closing Date.

u. It was further part of the scheme that TTS clients were unaware at the time of the sale of TTS that the money that had been withdrawn from their bank accounts for the payment of Payroll Taxes had not been paid to the IRS as required by law.

v. It was further part of the scheme that it was not until after defendants HOLZWANGER, MUHLSTOCK, and GUTHARTZ sold TTS that TTS clients learned, through notices from the IRS, that the money that had been withdrawn from their bank accounts for the payment of Payroll Taxes but had not been paid over to the IRS.

8. On or about the dates listed below, for the purpose of executing and attempting to execute this scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, defendants

MARK HOLZWANGER,
ANDREW MUHLSTOCK,
STEPHEN GUTHARTZ, and
RUSSELL SPERANZA

did knowingly and willfully cause to be transmitted by means of wire in interstate commerce, writings signs, signals, and sounds, that is, the following wires of money from TTS clients' bank

accounts to TTS' bank account:

| Count | Date | Wire |
|-------|------|------|
| 1 | October 25, 2005 | $18,136.52 wire from the bank account of a TTS client in New Jersey to the bank account of TTS in New York |
| 2 | October 25, 2005 | $138,631.20 wire from the bank account of a TTS client in New Jersey to the bank account of TTS in New York |
| 3 | October 31, 2005 | $5,358.98 wire from the bank account of a TTS client in New Jersey to the bank account of TTS in New York |

In violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

A TRUE BILL

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: _____

## United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

MARK HOLZWANGER,
ANDREW MUHLSTOCK,
STEPHEN GUTHARTZ, and
RUSSELL SPERANZA

# INDICTMENT FOR

18 U.S.C. § 1343 and 18 U.S.C. § 2

A True Bill,

_____

Foreperson

_____

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

HARVEY BARTLE, IV
*ASSISTANT U.S. ATTORNEY*
*TRENTON, NEW JERSEY*
*(609) 989-2190*

USA-48AD 8
(Ed. 1/97)