NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Criminal No. 10-00714 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MARK HOLZWANGER, | : | |
| ANDREW MUHLSTOCK, | : | |
| STEPHEN GUTHARTZ, and | : | |
| RUSSELL SPERANZA | : | |
| | : | |
| Defendants. | : | |
| | : | |

PISANO, District Judge.

Presently before the Court is an omnibus pretrial motion by the defendants Mark Holzwanger ("Holzwanger"), Andrew Muhlstock ("Muhlstock") and Stephen Guthartz ("Guthartz" and, together with Holzwanger and Muhlstock, the "Moving Defendants").  Co-defendant Russell Speranza ("Speranza") joins in the motion.  The United States of America (the "Government") opposes the motion.  For the reasons set forth herein, the Moving Defendants' omnibus pretrial motion is denied.

## I.      FACTUAL BACKGROUND

The Moving Defendants and Speranza (together, the "Defendants") are charged by Indictment No. 10-714 (the "Indictment") with wire fraud under 18 U.S.C. § 1343 (the "Wire Fraud Statute").  The Indictment charges the Defendants with engaging in a scheme to defraud the clients of Total Time Solutions LLC ("TTS"), a now-bankrupt payroll services company that

the Defendants owned or operated between 2002 and 2005.  The Indictment describes a scheme in which the Defendants fraudulently induced and caused clients of TTS to allow money to be withdrawn from their bank accounts purportedly to be paid over to the Internal Revenue Service (the "IRS") for the clients' payroll taxes, but instead used that money to pay the operating expenses of TTS.  Indictment, ¶ 6.

According to the Indictment, clients of TTS were told that money withdrawn from their bank accounts would be used to pay those clients' payroll taxes when due.  Indictment, ¶ 7(d). Instead, money withdrawn from TTS clients' bank accounts was used to pay the operating expenses of TTS and the payroll taxes of other TTS clients.  Indictment, ¶¶ 6 and 7(e).  It was part of the scheme that when a TTS client received notice from the IRS regarding the late payment or non-payment of payroll taxes, that client was not informed that the money withdrawn from its bank account had not been paid over to the IRS.  Indictment, ¶ 7(i).  The Indictment also alleges that the Defendants concealed the late payment and non-payment of payroll taxes by submitting false reports to clients of TTS and false payroll tax forms to the IRS.  Indictment, ¶¶ 7(f) - (h).  According to the Indictment, Holzwanger and Muhlstock also claimed losses on their personal tax returns when no actual losses existed.  Indictment, ¶¶ 7(l) – (o).

The Indictment further alleges that, in or about September 2005, Holzwanger, Muhlstock and Guthartz entered into an agreement to sell TTS (the "Agreement").  Indictment, ¶ 7(q). Attached to the Agreement was a balance sheet for TTS dated as of September 30, 2005 that stated that TTS had cash on hand of approximately $1.6 million and liabilities of over $5 million in unpaid client taxes.  Indictment, ¶ 7(q).  Holzwanger, Muhlstock and Guthartz later executed an amendment to the Agreement which listed approximately $127,000 in unpaid client payroll taxes as of the closing date of November 1, 2005.  Indictment, ¶ 7(s).  In fact, according to the

2

Indictment, over $3 million in payroll taxes had not been paid over to the IRS at that time. Indictment, ¶ 7(t).

The Moving Defendants filed the instant motion on February 17, 2011. First, they argue that the Indictment should be dismissed for various reasons including that: (1) it does not sufficiently allege a crime, (2) the Wire Fraud Statute is unconstitutionally vague and was misapplied to the conduct in this case and (3) it improperly joins the offenses of wire fraud and tax fraud in a single count. The Moving Defendants also contend that, in the event the Indictment is not dismissed, the Court should strike certain material therefrom as irrelevant and prejudicial. They argue, further, that the Court should sever the Moving Defendants from the Indictment and try them separately from Speranza. The Moving Defendants also ask the Court to order the Government to disclose (1) its legal instructions to the grand jury, (2) all *Brady* material of which it is aware or that is in its possession and (3) the names of all informants and the contents of their communications with the Government, even if the Government will not call them as trial witnesses. Finally, the Moving Defendants argue that the Government should be required to file a bill of particulars.

## II.     LEGAL ANALYSIS

A.     Motion to Dismiss the Indictment.

The Moving Defendants make several arguments in support of their motion to dismiss the Indictment. First, the Moving Defendants claim that the Indictment should be dismissed because the conduct alleged therein was authorized by contract and, therefore, does not constitute a crime. Second, they argue that the Indictment fails to allege the intent required under the Wire Fraud Statute. Third, they contend that the Wire Fraud Statute is unconstitutionally vague as applied to the conduct in this case. Fourth, they claim that the Wire Fraud Statute was

misapplied to the conduct alleged in the Indictment.  Finally, the Moving Defendants argue that the Indictment improperly joins wire fraud and tax fraud in the same count.

On a motion to dismiss, the court must consider the entire Indictment.  *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).  A defendant may not use a pretrial motion to dismiss an indictment based upon a claim that there is insufficient evidence to support it.  *United States v. DeLaurentis*, 230 F.3d 659, 660-661 (3d Cir. 2000).  Instead, a court must assume that the allegations in the indictment are true.  *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

1.  Whether The Indictment Should Be Dismissed Because The Conduct Was Authorized By Contract.

The Moving Defendants argue that the Indictment should be dismissed because the conduct alleged therein is authorized by the standard TTS client contract (the "TTS Contract").[1] In support, the Moving Defendants focus on two particular allegations contained in the Indictment.  First, they point to language in the Indictment stating that "TTS clients were falsely informed" that payroll taxes would be paid to the IRS "when due."  Indictment, ¶ 7(d).  They claim that this allegation is contradicted by language in the TTS Contract that explicitly addresses late payments by assigning liability for interest and penalties to TTS, so long as the delay is not the fault of the client.  TTS Contract, ¶ 6.  Second, the Moving Defendants point out that the Indictment alleges that it was "part of the scheme that money withdrawn from one TTS client's bank account for the payment of that client's payroll taxes was used to pay the payroll taxes of other TTS clients."  Indictment, ¶ 7(e).  The Moving Defendants claim that the TTS Contract explicitly allowed for this comingling.  TTS Contract, ¶ 2 ("[c]lient acknowledges and

---

[1]       The Government points out that Moving Defendants have not certified that the TTS Contract was the standard client contract between TTS and its clients.  The court will assume this fact for purposes of this motion.

agrees that TTS Payrolls may commingle Client funds with other Client funds in accounts maintained for the purpose.")

The Moving Defendants rely on *United States v. Bryant*, 556 F.Supp.2d 378 (D.N.J. 2008) in arguing that the Indictment should be dismissed based on these provisions of the TTS Contract.   In *Bryant*, the indictment alleged that the defendant, the dean of a medical school, committed mail, wire and honest services fraud based on an alleged scheme to fraudulently award himself bonuses in violation of the terms of an agreement between the medical school administration and the school's faculty physicians.   556 F.Supp.2d at 439.   The allegations contained in the indictment were dependent on the defendant's conduct having violated that contract.  *Id.* at 440 - 441.  The Court explained that "to sustain the weight of a conviction for mail and wire fraud that depends on a violation of the [contract], the [contract] must unambiguously prohibit [the defendant's] conduct, and the Indictment must so allege."  *Id.* at 444.  The Court found that "if a reasonable construction of the [contract] . . . could validate [the defendant's] actions, it follows that he could not have had constitutionally sufficient notice that his conduct constituted the 'scheme or artifice to defraud' alleged in the Indictment."  *Id.* at 447.

Here, unlike in *Bryant*, the Moving Defendants' conviction for wire fraud does not depend on their violation of the TTS Contract.  Instead, the Indictment alleges that the Moving Defendants and Speranza used the comingled client money to pay the operating expenses of TTS, instead of paying payroll taxes.  The Indictment also alleges that the Moving Defendants and Speranza concealed the late payment of taxes by submitting false reports to clients and false payroll tax returns to the IRS and the clients.  Because the scheme to defraud in this case is not premised on the commingling of funds or late payments, the Court finds that the Moving Defendants are not entitled to dismissal.

2. <u>Whether The Indictment Should Be Dismissed Because It Fails To Allege The Requisite Intent</u>.

The Moving Defendants also claim that the Indictment should be dismissed for failure to allege fraudulent intent.  According to the Moving Defendants, "the gravamen of the Indictment is that TTS allegedly failed to pay certain payroll taxes as it had contracted to do."  Moving Defendants' ("<u>Mov. Def.</u>") Brief at 9.  They complain that the Indictment fails to allege that, at the time TTS entered into contracts with its clients, the Moving Defendants did not intend to pay those clients' payroll taxes.  Therefore, the alleged conduct "at most alleges a breach of contract, or other civil wrong".  Mov. Def. Brief at 8.[2]

The Federal Rules of Criminal Procedure require that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).  The Third Circuit has stated that an indictment meets this standard if it:

> (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendants of what he must be prepared to meet, and (3) allows the defendants to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (quoting *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir.1989)).  An indictment fulfilling these requirements is "enough to call for a trial of the charge on the merits." *Vitillo*, 490 F.3d at 320.   The Court finds that the Indictment meets this standard.  It sets forth the elements of the Wire Fraud Statute, provides detailed allegations concerning the scheme to defraud and gives the dates and description of each wire in furtherance of that scheme to defraud.  *See* Indictment  ¶¶ 5 – 8.  It contains more than enough specificity to apprise the Moving Defendants of what they must be prepared to meet and would

---

[2]  The Moving Defendants also argue that the Indictment should be dismissed because it is unclear about whether it charges a scheme to defraud <u>all</u> of the clients of TTS or just <u>some</u> of them.  However, as correctly noted by the Government, an indictment does not need to provide a defendant with the specific names of the victims of his offenses.  *United States v. Banks*, 300 Fed. Appx. 145, 149 (3d Cir. 2008).

allow them to invoke double jeopardy in the event of a subsequent prosecution. *See Rankin*, 870 F.2d at 112 ("no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.")

> 3.   Whether The Indictment Should Be Dismissed Because the Wire Fraud Statute Is Unconstitutionally Vague.

The Moving Defendants also contend that the Indictment should be dismissed because the Wire Fraud Statute is unconstitutionally vague as applied to the conduct alleged in the Indictment. "[T]he void-for-vagueness doctrine requires that a penal statue define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). The Supreme Court has explained that the second element is more "important" than the first because without "such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " *Id*. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).

The Wire Fraud Statute proscribes any "scheme or artifice to defraud" which involves the use of the wires. 18 U.S.C. § 1343. "To prove . . . wire fraud, the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) (internal quotation omitted). "[T]he words 'to defraud' . . . have the common understanding of wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching."

*Carpenter v. United States,* 484 U.S. 19, 27 (1987) (internal quotation omitted).  A "scheme to defraud" may be carried out by deceitful statements, concealment of material facts, fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.  *Bryant*, 556 F.Supp.2d at 431 (quoting *United States v. Olatunji,* 872 F.2d 1161, 1167 (3d Cir. 1989) and *United States v. Stackpole,* 64 Fed.Appx. 842, 842 - 843 (3d Cir. 2003)).

In support of their argument that the Wire Fraud Statute is unconstitutionally vague as applied to this case, the Moving Defendants complain that the Indictment fails to "sufficiently notify the [M]oving [D]efendants of the fraud with which they are charged." Mov. Def. Brief at 16.  However, according to the Indictment, the scheme or artifice to defraud was that the Moving Defendants made false representations to TTS clients that TTS would use their clients' money to pay those clients' payroll taxes when, in reality, the Moving Defendants used that money to pay the operating expenses of TTS.  Indictment, ¶¶ 7(b) and (c).  The Court finds that this allegation sufficiently notifies the Moving Defendants of the fraud with which they are charged.

4.  Whether the Wire Fraud Statute Was Appropriately Applied to the Conduct Alleged In The Indictment.

The Moving Defendants also contend that the Indictment should be dismissed because the Wire Fraud Statute was misapplied to the conduct alleged therein.  They argue that the Government has "stretched the wire fraud statue to cover activity beyond its plain words." *United States v. Jones*, 471 F.3d 478, 482 (3d Cir. 2006).  Instead, the Moving Defendants claim that the conduct alleged in the Indictment would more clearly fit with a charge for theft, conversion or embezzlement.

In arguing that the Indictment should be dismissed for "misapplication", the Moving Defendants rely on *United States v. Murphy*, 323 F.3d 102 (3d Cir. 2003), and *United States v.*

*Jones*, 471 F.3d 478 (3d Cir. 2006). In *Murphy*, the defendant was convicted of mail fraud based on the theory of deprivation of honest services. 323 F.3d at 104. In reversing the defendant's conviction, the Third Circuit found that the honest services fraud statute was "misapplied" because state law must create a fiduciary relationship between the defendant and the alleged victim of honest services fraud. *Id*. Thus, *Murphy* is readily distinguishable from this case based on its application in the context of honest services fraud. In *Jones*, the defendant was convicted of health care fraud based on her retention of client payments made to the clinic where she worked. 471 F.3d at 479. According to the government, the defendant's misrepresentation was that she had obtained the money from her employer through a false promise to not steal. *Id*. at 481. The Court found that the government had not established, nor did it seek to establish, any type of misrepresentation by the defendant in connection with the delivery of, or payment for, health care benefits, items, or services. *Id*. The Court found that "an implicit promise not to steal" from an employer does not amount to a misrepresentation for purposes of a fraud conviction. *Id*. at 481 – 482. Here, unlike in *Jones*, the Government alleges misrepresentation on the part of the Moving Defendants. Moreover, the Court notes that, in both *Murphy* and *Jones*, the Third Circuit analyzed whether the Government had established the elements at trial, not whether the Indictment should be dismissed. Therefore, the Court finds that the Moving Defendants have failed to show how the Wire Fraud Statute was misapplied to the facts in this case.

     <u>5.</u>  <u>Whether The Indictment Should Be Dismissed Because It Improperly Joins Wire Fraud And Tax Fraud</u>.

The Moving Defendants claim that the Indictment alleges two distinct and separate offenses, wire fraud and tax fraud, and that it improperly charges tax fraud within the wire fraud count. Accordingly, the Moving Defendants argue that the Indictment is duplicitous and should

be dismissed.  "Duplicity is the joining of distinct and separate offenses in a single count." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975).  A duplicitous indictment results in a "general verdict [that] does not reveal exactly which crimes the jury found the defendant had committed."  *United States v. Hinton*, 127 F.Supp.2d 548, 553 (D.N.J. 2000) (internal quotation omitted).  If "a court finds that an indictment is duplicitous it must take one of two courses of action; it must either dismiss the duplicitous count in the indictment, or require the government to make an election to select and charge one but not all of the offenses embraced in the duplicitous count." *Id.* at 554.

In support of their claim that the Government is charging tax fraud, the Moving Defendants point to the allegations contained in the Indictment that accuse Holzwanger and Muhlstock of claiming losses on their personal tax returns when no such losses existed.  The Moving Defendants argue that the jury could conclude that the Moving Defendants did not engage in a wire fraud scheme but still return a guilty verdict against the Moving Defendants based on the conclusion that they committed tax fraud.  The Court finds that the Moving Defendants' concerns are misplaced.  The Indictment does not allege several factual scenarios, any one of which could fulfill the elements of one count of wire fraud.  *See Hinton*, 127 F.Supp.2d at 556 (indictment was duplicitous where the government charged defendant with one count of bank fraud that involved at least 128 different transactions in furtherance of a scheme to defraud six different financial institutions).  In addition, the Court has not charged the jury with detailed instructions on two crimes for an indictment containing only one count.  *See Starks*, 515 F.2d at 116 - 118 (indictment was duplicitous where attempt and conspiracy alleged under same count and jury charge required jury to find defendant guilty of both).  In addition, to the extent that the Indictment is duplicitous, the Government has essentially made an election by

confirming that it will not argue at trial that the Moving Defendants' inclusion of losses on their personal tax returns was in violation of the tax law. *See Hinton,* 127 F.Supp.2d at 554 (where an indictment is duplicitous, the government may "make an election to select and charge one but not all of the offenses embraced the duplicitous count.")  Moreover, the Court notes that where there is a risk of prejudice, it may be cured by proper jury instructions. *Zafiro,* 506 U.S. 534, 540 (1993); *see United States v. Pungitore,* 910 F.2d 1084, 1136 (3d Cir. 1990) (holding jury instructions cured a duplicitous indictment where they "sufficiently informed the jury of its obligation to deliver a unanimous verdict as to a particular theory").  The Court finds that any risk of prejudice that may exist based on the tax allegations in the Indictment can be cured by appropriate jury instructions.   Therefore, the Moving Defendants' motion to dismiss the Indictment is denied.

B.    Motion To Strike Certain Material From The Indictment.

The Moving Defendants argue that the Court should strike certain material from the Indictment.  Specifically, the Moving Defendants claim that paragraphs 7(j) through 7(t) of the Indictment should be struck because those paragraphs contain material that is not relevant to the elements of the offense and prejudicial to the Moving Defendants.  As stated above, the Federal Rules of Criminal Procedure require that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c). Generally, an indictment may include "matters that the government intends to prove at trial, 'even if they are not essential elements of the crime charged,' so long as 'it is in a general sense relevant to the overall scheme charged in the indictment.' "  *United States v. Lalley*, 2010 WL 3946659 at *3 (D.N.J. Oct. 5, 2010) (quoting *United States v. Giampa*, 904 F.Supp. 235, 271-272 (D.N.J. 1995)).  However, Federal Rule of Criminal Procedure 7(d) provides that "the court

may strike surplusage from the indictment or information."  A court should strike language from an indictment that is "both irrelevant (or immaterial) and prejudicial."  *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006).  This is "an exacting standard which is met only in rare cases." *United States v. Eisenberg*, 773 F.Supp. 662, 700 (D.N.J. 1991) (citations omitted).

The Moving Defendants raise two objections to the language in the Indictment.  First, the Moving Defendants argue that allegations concerning tax filings prepared for TTS, Holzwanger and Muhlstock are irrelevant because they do not relate to the essential elements of the Wire Fraud Statute and prejudicial because they invite jurors to determine that Holzwanger and Muhlstock violated the law by declaring losses on those tax filings when they had "no actual loss".  Second, the Moving Defendants complain that allegations concerning the sale of TTS are irrelevant because that sale had no role in the alleged scheme to deprive TTS clients of their money and prejudicial because these allegations accuse the Moving Defendants of defrauding Ingentra even though they are being charged with defrauding the clients of TTS.

The Court finds that the allegations concerning the tax filings and the sale of TTS are relevant to the Government's ability to establish the wire fraud charges against the Moving Defendants.  The allegations are relevant to show, among other things, the Moving Defendants' knowledge of the financial situation at TTS, their ownership interest in TTS and their attempts to conceal losses incurred by TTS.  While the alleged conduct is not an essential element of the alleged crime, it is relevant to the overall scheme to defraud.  *See Lalley*, 2010 WL 3946659 at *4 (finding that allegations concerning certain conduct that was not an essential element of an obstruction of justice charge was still relevant to the overall charge).  Moreover, as noted above, where there is a risk of prejudice, it may be cured by proper jury instructions.  *Zafiro,* 506 U.S. 534, 540 (1993); s*ee Giampa,* 904 F.Supp. at 272 (D.N.J. 1995) (noting that jury instructions

could protect against improper juror reliance upon indictment as evidence).  The Court finds that any risk of prejudice to the Moving Defendants that may exist based on the allegations contained in the Indictment concerning the tax filings or the sale of TTS can be cured by appropriate jury instructions.  Therefore, the Moving Defendants' motion to strike is denied.

C.     <u>Motion to Sever Speranza From The Indictment</u>.

The Federal Rules of Criminal Procedure permit the joinder of multiple defendants "if they are alleged to have participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.Pro. 8(b).  "Joint trials of defendants named in a single indictment are favored because they 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.' " *United States v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  However, Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendants or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires."  Whether or not a severance should be granted is within the discretion of the trial court.  *United States v. Boyd*, 595 F.2d 120, 125 (3d Cir. 1978).  In exercising its discretion, the Court must weigh the potential undue prejudice to the defendant against the interests of judicial economy and any potential undue prejudice to the Government. *United States v. Sandini,* 888 F.2d 300, 305 (3d Cir. 1989).  However, "notwithstanding the need for efficiency in judicial administration, a joint trial is inappropriate if it sacrifices a defendant's right to a fundamentally fair trial." *United States v. Rosa*, 404 F.Supp. 602, 610 (W.D.Pa 1975) (citing *United States v. Shuford*, 454 F.2d 772, 775-776 (4th Cir. 1971) and *United States v. Echeles*, 352 F.2d 892, 896 (7th Cir. 1965)).

The Moving Defendants first argue that Speranza should be severed from the Indictment because he is a crucial fact witness for Holzwanger and Muhlstock.  The Third Circuit has set forth four factors to determine whether to sever a defendant so that he might offer exculpatory testimony for another: (1) the likelihood that the co-defendant would testify if a severance were granted; (2) the degree to which the testimony would be exculpatory; (3) the degree to which the testifying co-defendant could be impeached; and (4) judicial economy.  *United States v. Boscia*, 573 F.2d 827, 832 (3d Cir. 1978).  The Moving Defendants argue that the Indictment unambiguously accuses Holzwanger and Muhlstock of wrongdoing in connection with their personal tax returns as an alleged component of the charged wire fraud scheme.  They argue that they are entitled to present a defense to that accusation based upon the advice received from Speranza, who was their accountant.  The Moving Defendants also claim that Speranza is a crucial fact witness for Muhlstock.  They claim that Speranza will exculpate Muhlstock by testifying that, among other things, Muhlstock had no knowledge of a scheme or intent to defraud TTS clients.  The Moving Defendants believe Speranza will also testify that Muhlstock did not operate TTS, did not acquire or request any money from TTS clients and did not participate in a scheme to defraud.  Finally, they claim that he will confirm that Muhlstock did not have contact with TTS customers concerning any TTS business and that he did not handle any TTS customer complaints.

The Court finds that the four *Boscia* factors weigh against severing Speranza from the Indictment.  First, it is unclear whether Speranza would waive his Fifth Amendment rights and testify on behalf of any of the Moving Defendants.  The Moving Defendants assert that Speranza would testify on their behalf if the trials were separate; however, this assertion was at least partially contradicted by counsel for Speranza at a pre-trial hearing.  Further, "[b]are assertions

that co-defendants will testify are insufficient" to support severing a co-defendant. *Boscia*, 573 F.2d at 832 (citation omitted). Second, Speranza's anticipated testimony could be somewhat exculpatory to the extent he would confirm Muhlstock's limited degree of participation in the operation of TTS; however, the Court notes that it was indicated during a pre-trial hearing that other TTS employees could also testify to this information. In addition, as discussed above, because Muhlstock and Holzwanger are not charged with tax fraud, Speranza's testimony in connection with his preparation of their tax filings is not likely to provide exculpatory information with respect to the count of wire fraud. The third factor is unclear because the Moving Defendants have made no showing regarding the degree to which Speranza may be subject to impeachment. Finally, judicial economy weighs in favor of denying the motion to sever. Other considerations aside, separate trials are simply more expensive and time-consuming. *See Boscia,* 573 F.2d at 833 ("where there is a reasonable assurance that defendants will be given a fair trial regardless of whether a severance is granted, judicial economy becomes a relevant factor.") Having considered the four *Boscia* factors, the Court denies the Moving Defendants' motion to sever based on his purported exculpatory testimony.

The Moving Defendants also argue that Speranza should be severed because he will offer a defense that is irreconcilably in conflict with that of Holzwanger and Guthartz. They speculate that the Government will seek to establish the Moving Defendants' knowledge and participation in the alleged scheme based upon the degree of their involvement in the operational affairs of TTS. The Moving Defendants plan to offer evidence that Steven Reiger, TTS's founding president and CEO, maintained operational control of TTS until March 2004. The Moving Defendants will argue that, after March 2004, Speranza was responsible for TTS' operational issues. They also believe that Speranza will argue that Holzwanger and Guthartz were

responsible for TTS' operations after Steven Reiger's termination and that his own involvement was minimal.  The Moving Defendants point out that these defenses are antagonistic and claim that it would be prejudicial to compel them to present these inconsistent defenses in a single trial.

According to the Third Circuit, "severance need be granted only if the defense theories are antagonistic 'to the point of being irreconcilable and mutually exclusive.' " *Sandini*, 888 F.2d 300, 310 (3d Cir. 1989) (quoting *United States v. Provenzano*, 688 F.2d 300, 310 (3d Cir. 1982)). Mutually exclusive defenses exist "when acquittal of one co-defendants would necessary call for the conviction of the other." *United States v. Voigt*, 89 F.3d 1050, 1095 (3d Cir. 1996) (citing *United States v. Tootick,* 952 F.2d 1078, 1081 (9th Cir.1991)).   " '[T]he mere presence of hostility among defendants' is insufficient to require separate trials." *Provenzano*, 688 F.2d at 198 (quoting *United States v. Barber*, 442 F.2d 517, 530 (3d Cir. 1971)).  "[C]ourts have consistently held that finger-pointing and blame-shifting among co-conspirators do not support a finding of mutually antagonistic defenses." *Voigt*, 89 F.3d at 1095 (citing *Provenzano*, 688 F.2d at 198).  The Moving Defendants have made no showing that an acquittal of Speranza would necessary call for the conviction of the Moving Defendants or vice versa.  Therefore, the Court finds that they have not offered proof of mutually exclusive defenses requiring severance.

D.     Motion for Disclosure Of Grand Jury Materials.

The Moving Defendants ask the Court to order the Government to disclose its legal instructions to the grand jury or, in the alternative, to conduct an *in camera* review of the instructions.  Based on their review of the Indictment and the grand jury materials already disclosed through discovery, the Moving Defendants speculate that the Government did not adequately instruct the grand jury on the law and that this error prejudiced the Moving Defendants.  Specifically, the Moving Defendants point to: (1) the transcripts of two grand jury

witnesses who testified collectively about the actions and intentions of the Moving Defendants and (2) certain language in the Indictment relating to personal tax returns and the comingling of client funds.

In considering the Moving Defendants' request for discovery of grand jury materials, the Court notes that a party seeking access to grand jury materials must show a particularized need for the disclosure. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983); *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *McDowell,* 888 F.2d at 289. Thus, "[t]o support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy." *Id.*

There is a presumption of regularity in grand jury proceedings. *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 - 301 (1991); *United States v. Educational Development Network Corp.*, 884 F.2d 737, 740 (3d Cir. 1989). For a party to obtain information about the conduct of grand jury proceedings, that party must offer evidence of a "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972).

In the instant case, the Moving Defendants offer no evidence or compelling argument to justify the disclosure of grand jury material. Based on the Moving Defendants' review of the Indictment and the grand jury material already disclosed through discovery, the Moving Defendants speculate that there is a likelihood that the Government improperly instructed the grand jury on the law. However, mere speculation that evidence was improperly presented is insufficient to warrant disclosure of the information sought. *Id.* at 454; *see United States v.*

*Giampa*, 904 F.Supp. 235, 288 (D.N.J. 1995) ("[c]onclusory or speculative allegations about what went on in a grand jury proceeding give no cause to question the regularity of the grand jury's functioning.") (citations omitted).  The Moving Defendants have failed to demonstrate a "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." *Budzanoski,* 462 F.2d at 454.  Accordingly, the Moving Defendants' motion for disclosure of grand jury materials is denied.

E.    <u>Whether the Government Has Complied With Its *Brady* Obligations</u>.

The Moving Defendants ask the Court to order the Government to disclose all *Brady* material of which it is aware or that is in its possession.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that a prosecution's suppression of evidence that is favorable to a defendant is a violation of due process, regardless of the prosecution's good or bad faith, where that evidence is material to guilt or punishment.  "The government's *Brady* obligations attach to all exculpatory evidence in the government's actual or constructive possession."  *Maynard v. Government of Virgin Islands*, 392 Fed.Appx. 105, 113 (3d Cir. 2010).  However, the Government is not required to furnish a defendant with information he already has or, with any reasonable diligence, can obtain himself.  *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005) (quoting *United States v. Starusko,* 729 F.2d 256, 262 (3d Cir. 1984)).

The Moving Defendants claim that the Government has turned over exculpatory information for non-*Brady* purposes.  Based on this fact, the Moving Defendants speculate that the Government has been inattentive to its *Brady* obligations.  The Moving Defendants also point out that, in the course of their investigation, they have been advised that former TTS employees provided the Government with explicitly exculpatory information concerning one or more of the Moving Defendants, but the Government has not identified such witnesses to the Moving

Defendants.  In response, the Government has represented to the Court that it has produced all existing *Brady* material, is currently in compliance with its *Brady* obligations and claims that if it becomes aware of additional *Brady* material, it will provide it to the Moving Defendants.   The Court will hold the Government to its representation.  The motion is denied.

F.      Motion for Disclosure of Informant Information.

The Moving Defendants also ask the Court to order the Government to disclose the names and identities of all informers or informants, and the contents of their communications with the Government, even if the Government will not call them as trial witnesses.  In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court held that there is a qualified privilege preventing disclosure of the identity of persons who provide information to law enforcement officers based upon the public's right to, and the legitimate law enforcement interest in, information provided by informants.  353 U.S. at 59 – 60.  But, the Court also held that "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60-61.

There is no fixed rule to determine when disclosure of information relating to an informant is appropriate.  *Id.* at 62.  Instead, "once a defendant sets forth a specific need for disclosure, the court should balance 'the public interest in protecting the flow of information against the individual's right to prepare his defense.' " *United States v. Jiles*, 658 F.2d 194, 196 (3d. Cir. 1981) (quoting *Rovario*, 353 U.S. at 62)).  Disclosure "must depend on particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of informer's testimony, and other relevant factors." *Rovario*, 353 U.S. at 62.

Thus, the "first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure." *Jiles*, 658 F.2d at 197.   Here, the Moving Defendants have not set forth any facts showing a specific need for the disclosure.  Instead, the Moving Defendants simply argue that principals or employees of TTS who have been interviewed by the Government could offer evidence that would be crucial to the innocence or guilt of the Moving Defendants.  However, the Third Circuit has held that "mere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983).  Therefore, the Court finds that the Moving Defendants' motion to compel disclosure of the identity of informants should be denied.

G.   <u>Motion for A Bill Of Particulars.</u>

"The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio*, 451 F.2d 49, 63 - 64 (3d Cir. 1971) (quoting *United States v. Tucker*, 262 F. Supp. 305, 308 (S.D.N.Y. 1961)).  The Court has broad discretion to order a bill of particulars. *United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir. 1991).  "A bill of particulars should be granted where the indictment is too vague or indefinite to reasonably allow a defendants to prepare a defense." *United States v. Mariani*, 90 F.Supp.2d 574, 591 (M.D.Pa 2000).  A bill of particulars is also appropriate where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 - 1067 (3d Cir. 1989).  "A bill of particulars . . . is not intended to provide the defendant with the fruits of the

government's investigation, but is instead intended to give the defendant the minimum amount of information necessary to permit the defendant to conduct his own defense."   *Mariani*, 90 F.Supp.2d at 590 - 591 (citing *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985)).

The Moving Defendants ask the Court to order the Government to file a bill of particulars to adequately describe the offense, to assist the Moving Defendants to properly prepare the defense and to prevent surprise at trial.  The Moving Defendants complain that the indictment does not sufficiently explain the fraud alleged in this case and provide a list of 24 particulars that they would like the Government to answer.  As discussed in more detail above, the Court finds that the Indictment in this case contains sufficient factual and legal information for the Moving Defendants to understand the nature of the charges brought against them so that they may adequately prepare their defense, avoid surprise during the trial and protect themselves against a second prosecution for an insufficiently described offense.

## III.    CONCLUSION

For the reasons above, the Moving Defendants' motion is denied.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: May 4, 2011